PAUL B. DERBY [SBN 211352]
paul@derbycurtis.com
COURTNEY E. CURTIS [SBN 245231]
courtney@derbycurtis.com
MANE SARDARYAN [SBN 287201]
mane@derbycurtis.com
DERBY | CURTIS LLP
800 Wilshire Boulevard, Suite 1450
Los Angeles, California 90017
Telephone:  (213) 788-4500
Facsimile:   (213) 788-4545

PAUL J. SKIERMONT [Texas SBN 24033073]
paul.skiermont@skiermontpuckett.com
G. DONALD PUCKETT [Texas SBN 24013358]
donald.puckett@skiermontpuckett.com
ELIOT J. WALKER [Texas SBN 24058165]
eliot.walker@skiermontpuckett.com
SKIERMONT PUCKETT LLP
2200 Ross Ave, Suite 4800W
Dallas, Texas 75201
Telephone:  (214) 978-6600
Facsimile:   (214) 978-6601

Attorneys for Plaintiffs
Brian Denis Flynn and John Day

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DENIS FLYNN, and JOHN DAY, both individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EMMANUEL PACQUIAO, an individual; TOP RANK, INC., a Nevada corporation; MICHAEL KONCZ, an individual; ROBERT ARUM, an individual; and FREDERICK STEVEN ROACH, an individual,<br><br>Defendants. | CASE NO.:  2:15-cv-3381<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR:<br><br>(1) VIOLATION OF CAL. BUS. & PROF. CODE § 17200<br><br>(2) FRAUD & DECEIT<br><br>(3) NEGLIGENT MISREPRESENTATION<br><br><u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT

Plaintiffs Brian Denis Flynn ("Flynn") and John Day ("Day"), on behalf of themselves and all others similarly situated, bring this complaint against Emmanuel Pacquiao ("Pacquiao"), an individual, Top Rank, Inc. ("Top Rank"), a Nevada corporation, Michael Koncz ("Koncz"), an individual, Robert Arum ("Arum"), an individual, and Frederick Steven Roach ("Roach"), an individual (collectively, "Defendants"), and allege as follows:

## INTRODUCTION

1. This is a class action against Defendants on behalf of Flynn and Day and a class of all California customers who purchased the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event, subject to certain exclusions described below (the "Class"), having been falsely led to believe, through affirmative misrepresentations and intentional omissions, that it would be a competitive fight between two participants without serious injuries.

## THE PARTIES

### Plaintiffs

2. Plaintiff Brian Denis Flynn is, and at all relevant times hereto has been, a resident of the State of California, County of Los Angeles. He purchased the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event through his satellite provider DirecTV, paying $99.95 for the high-definition version of the fight.

3. Plaintiff John Day is, and at all relevant times hereto has been, a resident of the State of California, County of Los Angeles. He purchased the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event through his satellite provider DirecTV, paying $99.95 for the high-definition version of the fight.

4. Flynn and Day were surprised by the $99.95 price to view the Floyd Mayweather – Manny Pacquiao boxing event, which was by far the most either had ever paid for this type of live telecast. Flynn and Day each paid this price because the

fight was heavily advertised and promoted as the "Fight of the Century," with the participants spending considerable time preparing for the fight, and they both anticipated a competitive boxing event.

5. Had Flynn or Day known that Pacquiao was injured, or severely injured, suffering from a torn rotator cuff or other shoulder injury, and unable to train continuously leading up to the fight, they would not have paid the $99.95 price to view the Floyd Mayweather – Manny Pacquiao boxing event.

### Defendants

6. Defendant Emmanuel "Manny" D. Pacquiao ("Pacquiao") is a professional boxer who is, and at all times relevant was, a Filipino national domiciled outside of California.

7. Defendant Top Rank, Inc. ("Top Rank") is, and at all times relevant was, a Nevada corporation with its principal place of business at 748 Pilot Road, Las Vegas, Nevada 89169. Top Rank is Pacquiao's promoter, and served as Pacquiao's promoter in connection with his fight with Floyd Mayweather.

8. Defendant Robert "Bob" Arum ("Arum") is Top Rank's founder and Chief Executive Officer. Arum is, and at all times relevant was, a resident of the State of Nevada.

9. Defendant Michael Koncz ("Koncz") is Pacquiao's top adviser, provided the second signature on Pacquiao's Pre-Fight Medical Questionnaire, thereby attesting under penalty of perjury to the Nevada Athletic Commission that Pacquiao had not suffered any injury to his shoulders that needed evaluation or examination. Koncz is, and at all times relevant was, domiciled outside of California.

10. Defendant Frederick Steven "Freddie" Roach ("Roach") is Pacquiao's trainer, trained Pacquiao in connection with his May 2, 2015 fight with Floyd Mayweather, and would have observed the shoulder injury to Pacquiao and been involved in the treatment of the same. Roach is, and at all times relevant was, a resident of the State of California.

**JURISDICTION AND VENUE**

11.     This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendants, and the aggregate amount in controversy exceeds the sum of five million dollars ($5,000,000), exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant Pacquiao in that he has continuously and systematically trained for boxing matches within the forum state, including for the Mayweather – Pacquiao fight at issue in this action. Specifically, Pacquiao arrived in Los Angeles on February 28, 2015, to train for the Mayweather – Pacquiao fight, conducted his training for the same fight at the Wild Card Boxing Gym in Hollywood, California, and did not leave Los Angeles for Las Vegas, Nevada until April 27, 2015, just days before the Mayweather – Pacquiao fight.  The March 10, 2015 press conference to promote the fight was held at the Nokia Theatre in Los Angeles, the April 4, 2015 shoulder injury at issue herein occurred while Pacquiao was sparring in Hollywood, California, and the approximately April 8, 2015 misrepresentations regarding the reasons Pacquiao stopped sparring were made in Los Angeles, California.

13.     This Court has personal jurisdiction over Defendant Top Rank in that it serves as Pacquiao's promoter, and served as Pacquiao's promoter in connection with his fight with Mayweather, including promotion of Pacquiao's boxing activities in California.  In addition, this Court has personal jurisdiction over Top Rank in that it is registered to do business in the forum state, and has continuously and systematically represented boxers and promoted boxing events within the forum state.

14.      This Court has personal jurisdiction over Defendant Arum in that he is Top Rank's founder and Chief Executive Officer, and personally assisted Pacquiao and Top Rank in the promotion of Pacquiao's activities in California.  Specifically,

this Court has personal jurisdiction over Arum due to his close personal involvement with the promotion of Pacquiao and the activities of Top Rank in California, and Arum's business contacts with California (including the contacts giving rise to these causes of action) have been continuously and systematic.

15. This Court has personal jurisdiction over Defendant Koncz in that he is Pacquiao's top adviser, was personally involved with the promotion of the California activities of Pacquiao, provided the second signature on Pacquiao's Pre-Fight Medical Questionnaire—thereby attesting under penalty of perjury to the Nevada Athletic Commission that Pacquiao had not suffered any injury to his shoulders that needed evaluation or examination—and was present in California with Pacquiao at most or all relevant times alleged herein.

16. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and Defendants are subject to personal jurisdiction in this judicial district.

## STATEMENT OF FACTS

17. For years, Floyd Mayweather, Jr. and Manny Pacquiao discussed fighting each other for the welterweight boxing title. It was not until February 20, 2015, however, that Mayweather announced that a contract had been signed and he was set to fight Pacquiao on May 2, 2015, at the MGM Grand in Las Vegas, Nevada.

18. The Mayweather – Pacquiao fight was billed as the Fight of the Century. The two networks broadcasting the fight, HBO and Showtime, were able to charge $89.95 (standard definition) and $99.95 (high definition) for the fight. The previous high for a pay-per-view fight was the $64.95/$74.95 charged for the 2013 Mayweather – Canelo Alvarez fight. The initial estimates projected Mayweather earning upwards of $180 million, and Pacquiao $120 million, for their May 2nd fight.

19. Unbeknownst to the public, on or about April 4, 2015, during a sparring match, Pacquiao severely injured his right shoulder. Pacquiao sought medical

treatment at the Kerlan Jobe Orthopaedic Clinic. An MRI revealed a tear in the rotator cuff in Pacquiao's right shoulder, but the MRI results were not revealed to the public or state authorities until after the May 2nd fight.

20. Immediately after this April 4 injury, Pacquiao stopped sparring and sent his sparring partners home. Pacquiao and his representatives, including his trainer Freddie Roach, then falsely represented to the public that Pacquiao had stopped sparring because of the risk of burnout or peaking too early. Further, Pacquiao's sparring partners, including Dashon Johnson, were told to not mention to anyone the fact of Pacquiao's shoulder injury.

21. On the day of his weigh-in, Pacquiao completed a Pre-Fight Medical Questionnaire under penalty of perjury, and checked "no" box on questionnaire asking him if he had "any injury to his shoulders, elbows or hands that needed evaluation or examination." Pacquiao's advisor Koncz similarly signed the questionnaire under penalty of perjury. This answer was false, as has since been admitted.

22. Immediately prior to the fight, Pacquiao was denied a Toradol (anti-inflammatory) shot by the Nevada State Athletic Commission, as he had not disclosed the fact of his shoulder injury, and there was therefore no apparent reason for the shot. This shot would have benefited Pacquiao's performance and the quality of the fight, were the fight to have occurred despite Pacquiao's torn rotator cuff.

23. On Saturday, May 2, 2015, Manny Pacquiao fought Floyd Mayweather, Jr. for the welterweight boxing championship. Pacquiao lost a lopsided, unanimous decision to Mayweather. It has subsequently been revealed that although the public and authorities did not know of Pacquiao's injury, Mayweather's camp had been informed of it, permitting Mayweather to target Pacquiao's injured shoulder during the fight. After the fight, Pacquiao revealed the fact of his rotator cuff injury to the general public, and that he will require surgery and miss 9 – 12 months while rehabilitating his shoulder.

24.     If Defendants had revealed the fact of Pacquiao's shoulder injury, and not acted to conceal the same, including falsely informing the public of the reasons for cancelling sparring sessions in early April 2015, and concealing Pacquiao's shoulder injury from the Nevada State Athletic Commission, the fight would have been cancelled or postponed, and Plaintiffs and the Class would have either foregone purchasing the event or had their payments refunded.  Even if not cancelled or postponed, viewers would not have opted to pay $89.95/$99.95 for the event, knowing that Pacquiao, already an underdog, was seriously injured.

## CLASS ACTION ALLEGATIONS

25.     Flynn and Day bring this action on behalf of themselves and all other persons similarly situated within the State of California.  Under Federal Rule of Civil Procedure 23(b)(1), (b)(2), and (b)(3), the proposed class is both ascertainable and shares a well-defined community of interest in common questions of law and fact.

26.     The Class is currently defined as follows:  "All persons in the State of California who purchased the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event, excluding any persons (individuals or businesses) that purchased the broadcast in order to televise it for profit or in connection with the operation of a for-profit business.  The Class further excludes counsel representing the Class and all persons employed by said counsel; governmental entities; Defendants; any entity in which Defendants have a controlling interest; Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; any judicial officer presiding over this matter, the members of their immediate families, and judicial staff; and any individual whose interests are antagonistic to other Class members."

### Numerosity

27.     Class members are so numerous that individual joinder of all members is impracticable.  The number of Class members is at least tens of thousands of people.

28. Class members are readily ascertainable from pay-per-view purchase records of Floyd Mayweather – Manny Pacquiao boxing event.

### Commonality

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendants falsely, deceptively, and misleadingly made material misrepresentations and omissions to the Class and the public regarding Pacquiao's early April 2015 shoulder injury prior to the May 2, 2015 event; and

    b. Whether such statements and omissions by Defendants violates California statutory and common law prohibitions against such conduct.

### Typicality

30. Flynn's and Day's claims are typical of the claims of the Class. Flynn and Day sustained injury and a loss of money arising from, and as a result of, Defendants' unlawful common course of conduct. Flynn and Day purchased the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event based in substantial part on the heavily promoted and advertised boxing event, in which said promotion and advertising by Defendants concealed Pacquiao's shoulder injury and misrepresented the reasons for cancelling training sessions. Those material misrepresentations and omissions were a substantial factor in Flynn and Day's decisions to purchase the boxing event.

### Adequacy of Representation

31. Flynn and Day can fairly and adequately represent and protect the Class's interests. Flynn's and Day's claims are both typical of the Class's claims and are based on facts that are common to the Class. The Class representatives have suffered similar injuries and damages arising from Defendants' conduct. Flynn and Day can adequately represent the Class because they seek the same or similar remedies that

would be available to other Class members. No irreconcilable conflicts exist between the positions of Flynn and Day and those of the Class members.

32. Flynn and Day have retained attorneys who are competent and experienced in litigating class actions and who can represent their interests and that of the Class. Flynn, Day, and their counsel have performed significant work in identifying and investigating the potential claims in this action, and are willing to devote the necessary resources to vigorously litigate this action. Flynn, Day, and their counsel are aware of their fiduciary responsibilities to the Class to represent fairly and adequately the Class and are determined to discharge those duties by seeking the maximum possible recovery for the Class based on the merits of these claims.

## **Superiority of a Class Action**

33. A class action is a superior method for resolving the claims herein alleged as compared to other available group-wide methods for adjudicating these issues. Because of the nearly-certain low individual damage amount, which is less than $150 per Class member in almost every conceivable circumstance, individual Class members would have little incentive to prosecute such claims on an individual basis. Such individual actions are not cost-effective or practical, as the costs associated with proving a prima facie case would exceed the obtainable recovery.

34. Important interests are served by addressing the issues raised in the Complaint in a class action. Adjudication of individual claims would result in a great expenditure of court and public resources. Resolving the claims on a class wide basis results in significant cost savings. Class action treatment allows similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

35. Failure to certify a class would make it impossible for a great many of the Class members to seek relief. A class action presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

36. Flynn and Day are unaware of any insurmountable difficulties in the management of this action to preclude its maintenance as a class action and their claims can all be established at trial on a class wide basis.

## FIRST CAUSE OF ACTION

## [Violation of Cal. Bus. & Prof. Code section 17200 et seq.]

## Against All Defendants

37. Flynn and Day reallege and incorporate herein by reference paragraphs 1 through 36 above.

38. The Unfair Competition Law, California Business and Professions Code § 17200, et seq., defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

39. Defendants violated California Business and Professions Code § 17200, et seq., by making material misrepresentations and omissions about Pacquiao's shoulder injury while promoting and advertising the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event.

40. By engaging in the above described acts and practices, Defendants have committed unfair, unlawful, and/or fraudulent business practices within the meaning of California Business and Professions Code § 17200, et seq. Consumers suffered substantial injury they could not reasonably have avoided other than by not purchasing the product, and there was no countervailing benefit to consumers from Defendants' material misrepresentations and omissions about Pacquiao's shoulder injury. Defendants' acts and practices have deceived Class members and the public and thus constitute a fraudulent business practice.

41. The acts and practices of Defendants are an unlawful business act or practice because they violate the laws identified in this Complaint, including Fraud and Deceit, and Negligent Misrepresentation, as well as perjury and violations of Nevada law.

42. Flynn, Day, and members of the Class were injured in fact and lost money as a result of such acts of unfair competition.

43. Defendants received a portion of the funds paid by Flynn, Day, and the members of the Class.

44. Defendants profited enormously by misrepresenting Pacquiao's shoulder injury and not disclosing material information about that injury. Defendants' revenues attributable thereto are thus directly traceable to the millions of dollars paid out by Flynn, Day, and the Class for the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event.

45. Defendants, through their acts of unfair competition, have acquired money from Class members. Flynn, Day, and the Class request this Court disgorge and restore such money to them and enjoin Defendants from further violations of California Business and Professions Code §17200, et seq.

## SECOND CAUSE OF ACTION

### [Fraud and Deceit]

### Against All Defendants

46. Flynn and Day reallege and incorporate herein by reference paragraphs 1 through 36 above.

47. Defendants, from the time Pacquiao injured his shoulder in early April, through the time of the boxing event on May 2, 2015, consistently deceived Flynn, Day, and the Class by: (1) making false uniform misrepresentations to Flynn, Day, the Class, and the public, including, but not limited to, claims that the early April sparring sessions were cancelled for reasons other than Pacquiao's shoulder injury; and (2) concealing from Flynn, Day, the Class and the public, despite having superior, if not exclusive, knowledge of material facts to the contrary.

48. Flynn, Day, and the Class were unaware these material representations and omissions were knowingly false and misleading.

49. When Defendants made the foregoing misrepresentations, they knew or recklessly disregarded them to be false and/or had no reasonable basis for believing them to be true.

50. The misrepresentations and concealment of material facts were made and conducted by Defendants with the intent to mislead and induce Flynn, Day, and the Class to purchase the Saturday, May 2, 2015, live broadcast of the Floyd Mayweather – Manny Pacquiao boxing event, and had the effect of doing so.

51. In affirmative response to the false, fraudulent and/or willful misrepresentations and concealment of material facts by Defendants, Flynn, Day, and Class members were induced to and did purchase the live boxing event.

52. Flynn, Day, and other Class members reasonably based their decision to purchase the live boxing event on the misrepresentations and omissions of material fact by Defendants, and were damaged thereby.

53. Defendants' acts were done willfully, maliciously, with fraudulent intent and with deliberate disregard of the rights of Flynn, Day, and the Class, requiring an award of exemplary damages in addition to actual damages.

## THIRD CAUSE OF ACTION
### [Negligent Misrepresentation]

54. Flynn and Day reallege and incorporate herein by reference paragraphs 1 through 36 above.

55. Defendants had no reasonable grounds for believing their material misrepresentations and omissions were true.  Defendants should have known, or had a duty to learn, about the true facts that contradicted their misrepresentations and material omissions.

56. In making these material misrepresentations and omissions to Flynn, Day, and the Class, Defendants intended to induce Flynn, Day, and the Class to purchase the live May 2, 2015, boxing event.

57. At all times herein, Flynn, Day, and the Class were unaware of the falsity of Defendants' statements and omissions.

58. Flynn, Day, and the Class reasonably acted in response to the statements made by Defendants when they purchased the live boxing event.

59. As a proximate result of Defendants' negligent misrepresentations, Flynn, Day, and Class members purchased the live boxing event, and have been damaged and therefore request appropriate relief as described below.

## **PRAYER FOR RELIEF**

WHEREFORE, Flynn and Day, on behalf of themselves and on behalf of the members of the Class defined herein, as applicable, pray for judgment and relief as follows:

1. An order certifying this case as a class action and appointing Flynn and/or Day and his/their counsel to represent the Class;

2. An award of actual, statutory, and/or exemplary damages, as appropriate for the preceding causes of action;

3. An order requiring disgorgement of Defendants' ill-gotten gains by requiring the payment of restitution to Flynn and/or Day, and the members of the Class, as appropriate for the preceding causes of action;

4. Reasonable attorneys' fees, to the extent permitted by law;

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

5. All related cost of this suit;

6. Pre-judgment and post-judgment interest; and

7. Such other and further relief as the Court may deem necessary and appropriate.

DATED: May 5, 2015					DERBY | CURTIS LLP

By:  /s/ Paul B. Derby
_____
PAUL B. DERBY
COURTNEY E. CURTIS
MANE SARDARYAN

Attorneys for Plaintiffs